UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

KIM SCHOFIELD,

                                                                    **Case No**.

                                        Plaintiff,

                v.

WORLD WRESTLING ENTERTAINMENT INC.,          **COMPLAINT**

JOHN CENA, JACOB BRIAN DUTTON,

TKO GROUP HOLDINGS, INC.,                                      **TRIAL BY JURY DEMANDED**

PIX-RUSS MUSIC, and CYNTHIA JO RUSSELL          **ECF CASE**


                                        Defendants.

------------------------------------------------------------X

## NATURE OF THE ACTION

This is a civil action for rescission of a settlement agreement, damages for fraudulent
misrepresentation, fraudulent inducement, willful copyright infringement, breach of contract,
unjust enrichment, and declaratory judgment regarding copyright ownership.

## PRELIMINARY STATEMENT

1.        Plaintiff's late father, Pete Schofield, ("Schofield") was a Canadian bandleader
and arranger who, in 1974, recorded and released an instrumental cover version of the song "The
Night the Lights Went Out in Georgia," originally written and published by Bobby Russell in

1972/73. In addition to faithfully covering Russell's composition, Schofield created and recorded original musical arrangement elements in the intro and outro of his cover.  In 2003, Schofield's intro and outro from this arrangement and the sound recording were intentionally sampled and used without authorization to create the instrumental backbone of John Cena's well-known wrestling theme, "The Time Is Now." Since its release, "The Time Is Now" has been continuously used, distributed, and commercially exploited by Defendants, generating substantial revenue and ongoing harm to Plaintiff's rights. These original arrangement elements, and Schofield's sound recording as sampled in "The Time Is Now," are at the center of this dispute.

2.     Kim Schofield ("Plaintiff") brings this action for willful copyright infringement against Jacob Brian Dutton ("Jake One"), World Wrestling Entertainment, Inc. ("WWE"), TKO Group Holdings, ("TKO") and John Cena ("Cena"). This willful copyright infringement claim arises from the intentional and unauthorized sampling, use, and commercial exploitation of parts of a cover song recorded and arranged by Pete Schofield ("Schofield"), Plaintiff's late father.

3.     Plaintiff brings this action for fraudulent misrepresentation and fraudulent inducement against WWE regarding a settlement agreement release dated August 2017.  Plaintiff seeks rescission of the 2017 Settlement Agreement and Release due to WWE's deliberate concealment of material information exclusively within its knowledge depriving Plaintiff of proper valuation, material loss and leverage in settlement discussions.

4.     Plaintiff brings a claim for breach of contract against WWE for violating express terms and representations in a 2017 Settlement Agreement and Release.

5.      Plaintiff seeks a declaratory judgment regarding the validity, ownership, and scope of her copyright in the original arrangement elements and sound recording of "The Night the Lights Went Out in Georgia," due to an active and ongoing controversy with World Wrestling Entertainment, Inc. ("WWE"), Pix-Russ Music, and Cynthia Jo Russell, all of whom dispute Plaintiff's rights and have threatened litigation or demanded that Plaintiff withdraw her registrations.

6.      Plaintiff brings a claim for unjust enrichment against all Defendants. Plaintiff alleges that Defendants have received and retained substantial financial benefits from the unauthorized use, exploitation, and commercialization of Schofield's original musical arrangement elements and sound recording, without authorization, compensation, or legal right. Plaintiff seeks restitution of all profits and benefits wrongfully obtained because of Defendants' conduct.

## JURISDICTION AND VENUE

7.      This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. §§ 101 et seq., as well as related state-law claims including breach of contract and fraudulent misrepresentation under New York law.

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as the claims arise under the Copyright Act. The Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a).

9.      This Court has personal jurisdiction over Defendant World Wrestling Entertainment, Inc. ("WWE") because WWE is a party to the Settlement Agreement and Release

at issue, which provides that it is to be governed by and construed in accordance with the laws of the State of New York, and WWE regularly conducts business in New York. Upon information and belief, this Court has personal jurisdiction over Defendants TKO Group Holdings and John Cena because they regularly conduct business in New York and have committed acts giving rise to the claims alleged herein within the State of New York. Upon information and belief, Defendants Jacob Brian Dutton ("Jake One"), Pix-Russ Music, and Cynthia Jo Russell are subject to personal jurisdiction in this District because they have committed, authorized, or directed acts of copyright infringement and other unlawful acts alleged herein, which were purposefully directed at, or caused injury in, the State of New York.

10.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a), as a substantial part of the events or omissions giving rise to the claims occurred in this District, and one or more Defendants reside, may be found, or conduct business in this District.

## PARTIES

11.    Plaintiff, Kim Schofield, is a resident of Ajax, Ontario, Canada. Plaintiff is the daughter of Pete Schofield and holds 100% ownership of the copyright in both the original 1974 sound recording and the newly added musical elements authored by Pete Schofield, by way of inheritance and written assignment from her two brothers.  Plaintiff asserts these claims in her individual capacity as the exclusive owner of all rights in the Schofield sound recording and the original musical arrangement elements that were copied and exploited in the infringing work, "The Time Is Now."

12.    Pete Schofield, ("Schofield") was a Canadian bandleader, arranger, teacher, and musician who resided in Don Mills, Ontario, Canada.  Schofield was known for teaching and

mentoring teenagers who wanted to study music and be musicians. A sought out private woodwind teacher, Schofield provided opportunities for students to hone their musical talent and professional skills on "gigs" and in the recording studio. He ran four bands out of his home providing different levels of performance in each band. He was a very well-known respected musician and teacher and was a life-long member of the American Federation of Musicians (AFM). In his career Schofield produced, performed and recorded approximately eleven albums. In 1974, Schofield recorded an album called, "Do Something Nice Today". It is on this album, Schofield recorded his horn arrangement of the cover song "The Night the Lights Went Out in Georgia," originally authored by Bobby Russell. It is Schofield's intro and outro from this recording that has been sampled and looped for 3 minutes creating the infringing work, "The Time is Now".

13.     Upon information and belief, Defendant World Wrestling Entertainment, Inc. ("WWE"), formerly known as World Wrestling Federation, Inc. ("WWF"), is a Delaware corporation with its principal place of business in Stamford, Connecticut. WWE is one of the largest global sports-entertainment companies in the world producing globally distributed programming, pay-per-view and streaming events, live arena shows under the brands Raw, SmackDown, and ECW, among others, and distributing content through major platforms including Peacock and Netflix. WWE is the longtime employer and promoter of John Cena and features "The Time Is Now" as Cena's entrance theme song across its programming, live events, video games, merchandising, streaming platforms, and music releases, making "The Time is Now" the most widely recognized theme song in professional wrestling ever. Upon information and belief, WWE has sold, licensed, and commercially exploited "The Time Is Now," including distributing the song as part of the album "You Can't See Me." WWE regularly conducts

business in the State of New York and is a party to the 2017 Settlement Agreement and Release at issue in this action.

14.    Upon information and belief, Defendant TKO Group Holdings, Inc. ("TKO") is a Delaware corporation with its principal place of business in New York, New York. TKO is the publicly traded parent company of WWE, having acquired WWE in or about September 2023 through a widely publicized merger. Upon information and belief, since the merger, TKO has exercised ownership and control over WWE and has ratified or continued WWE's ongoing commercial exploitation and distribution of "The Time Is Now" and related intellectual property as part of its global sports entertainment business.

15.    Upon information and belief, Defendant John Cena ("Cena") is a resident of Land O' Lakes, Florida. Cena is a professional wrestler, actor, and public personality who has been under exclusive contract with WWE since approximately 2001. Cena is widely recognized as one of the most celebrated WWE Superstars of all time, and "The Time Is Now" has been used as his entrance theme song since March 2005.

16.    Upon information and belief, Defendant Jacob Brian Dutton ("Jake One") is an individual residing in Seattle, Washington. Jake One is a professional music producer known for sampling and creating beats and is credited with producing the instrumental track for "The Time Is Now," which is at issue in this action.

17.    Upon information and belief, Defendant Pix-Russ Music ("Pix-Russ") is a music publishing entity that administers and licenses the musical works of the late songwriter Bobby Russell, including the composition "The Night the Lights Went Out in Georgia." The precise

jurisdiction of incorporation and principal place of business of Pix-Russ is unknown to Plaintiff, but Pix-Russ conducts business throughout the United States and is represented by counsel in Beverly Hills, California.

18.     Upon information and belief, Defendant Cynthia Jo Russell is an individual residing in Nashville, Tennessee. She is the widow and legal heir of Bobby Russell and, at all relevant times, has exercised authority, control, and decision-making over Pix-Russ Music, including the administration and licensing of the Bobby Russell catalog.

19.     Pix-Russ Music and Cynthia Jo Russell are referred to collectively as "the Russell Defendants." The Russell Defendants, acting individually and jointly, licensed the Bobby Russell composition for use in the track "The Time Is Now," but neither possessed nor conveyed any rights to the independently authored, original horn arrangement elements created by Pete Schofield in 1974. Plaintiff asserts no claim to Bobby Russell's underlying composition and claims ownership only in the original musical material added by Pete Schofield in his 1974 recording.

## BACKGROUND FACTS

20.     In 1974, Pete Schofield ("Schofield"), a Canadian bandleader, arranger, and lifelong member of the American Federation of Musicians and the Toronto Musicians Association, lawfully recorded and produced an instrumental cover version of "The Night the Lights Went Out in Georgia," originally written and published by Bobby Russell in 1972/73. Schofield's recording was created and released on his album *Do Something Nice Today*, produced at Sound Canada Recording Studios—a fully unionized and legitimate recording

facility affiliated with Harry Fox, BMI, and ASCAP, and in compliance with all AFM requirements.  Schofield paid for and controlled every aspect of the session, and his master recording was distributed and commercially exploited with all necessary royalties and contracts in place, as confirmed by archival records, union agreements, and original invoices located at Library and Archives Canada.

21.    As was industry practice in 1974, Schofield lawfully created and recorded his cover version.  Within the scope of this cover, Schofield contributed original and distinctive musical expression by composing and arranging a unique horn-based introduction inspired by Russell and a wholly original outro, both of which were expressly not present in Russell's original composition.  These new elements added by Schofield did not alter or infringe upon the core melody or lyrics of the Russell work.  The horn-based introduction and outro that Schofield created in 1974 contain new melodic motion, altered harmonic progressions, newly composed rhythmic figures, original voicings for brass and woodwinds, altered phrasing, and expressive articulation, none of which appear in the underlying composition by Bobby Russell.  The original intro and outro are not mere ornamentation or performance flourishes; they are discrete, separately authored musical sections with their own melodic contours, harmonic sequences, rhythmic structures, and orchestral textures. These elements constitute independent musical authorship which the copyright office recognized.  Furthermore, these original sections form the foundation of the infringing work, "The Time is Now" and were sampled, looped and repeated throughout "The Time is Now", demonstrating that Schofield's original contribution was both substantial and musically standalone. The resulting work circulated publicly for nearly a decade and was never recognized as being derived from "The Night the Lights Went out in Georgia"

underscoring that the sampled portions were musically distinct and not readily identifiable as Russell's original composition.

22.    Schofield retained all rights to the master recording and arrangement. The sound recording and all newly added musical material were owned solely by Schofield until his death and thereafter passed by inheritance to Plaintiff and her two brothers, who in September assigned all rights to Plaintiff, Kim Schofield. All recordings were properly documented with AFM contracts and had sustained airplay, further demonstrating that all industry licensing and compliance requirements were met. No evidence exists that Schofield or Sound Canada ever failed to obtain or honor royalty obligations; every step was consistent with legal standards for professional recording artists at the time.

23.    Plaintiff nor the Schofield family were aware of any unauthorized exploitation of Schofield's work by others. This changed in 2015, when Plaintiff was contacted by a musician who had performed on the 1974 recording. He had been contacted by a TMZ journalist writing an article about John Cena's WWE entrance theme, "The Time Is Now," claiming that the samples came from Schofield's sound recording. At that time, Plaintiff and her family had no familiarity with copyright law, no knowledge of U.S. legal requirements, and no awareness of John Cena, WWE, or the song, "The Time is Now".

24.    After seeking advice from Canadian legal counsel, Plaintiff was referred to U.S. entertainment attorneys, as the matter involved infringement under U.S. law. Plaintiff retained counsel on a contingency basis due to limited financial resources, and obtained power of attorney for her mother, Edna Schofield, to pursue the matter on behalf of the Estate. During the initial investigation, Plaintiff's counsel discovered a 2005 license agreement between John Cena and

Jeffrey Sniderman ("Sniderman"), son of Art Snider who owned Sound Canada, where the album was recorded. The album was released on two record labels.  Art Snider's Periwinkle label and PS Records label (Schofield's own label).  The Periwinkle release was strictly non-exclusive, conferring no rights of ownership, licensing, or assignment in the sound recording or arrangement; all such rights, as well as the original master tape itself, have remained continuously with Pete Schofield and now with the Plaintiff. Accordingly, no third party, including Periwinkle or Sniderman, ever had authority to license or assign rights in the master recording; the license did not name WWE as a party; and it was executed without notice or participation by the Schofield family. The license between Cena and Sniderman was obtained after the sample had already been created, sold and recorded without any permission.  WWE, nevertheless, proceeded to commercially exploit the track relying on this invalid license for over a decade.

25.    Unbeknownst to Plaintiff, upon information and belief, WWE had, as early as 2003, commissioned music producer Jacob Brian Dutton ("Jake One") to sample Schofield's original recording and create the instrumental backbone of "The Time Is Now." According to Jake One, WWE paid him directly and used the sampled horn intro and outro as the foundation for John Cena's theme, recording and distributing the infringing work for two years before any license was obtained from any party. WWE intentionally concealed this fact during all subsequent correspondence and negotiations held in 2017. In 2023, Plaintiff discovered a YouTube video Jake One posted in 2021, which explained exactly how he took the samples directly from Schofield's album, which he has in hand, stating he took the intro and the outro and looped them together to make the song, "The Time is Now". In that video he said he was paid $60,000 for the beats. In a recent article dated November 2025, Jake One claims he was paid

$30,000 for the beats and John Cena wrote him a personal check. This sampling of Schofield's recording was long before any license was acquired from anyone and was not public knowledge and could not have been discovered by Plaintiff or her counsel.

26.    When Plaintiff's counsel first contacted WWE in 2015, WWE aggressively denied any wrongdoing, claimed it had properly licensed the work, minimized the value of the sampled material, and falsely stated that Schofield was not the "maker" of the sound recording. WWE never disclosed its secret, unlicensed use of the recording in 2003–2004, nor did it reveal its financial negotiations and lucrative commercial licensing deals involving "The Time Is Now." In 2016 and 2017, WWE repeatedly threatened litigation and disparaged the Estate's requests for credit and fair compensation as "greedy" and "opportunistic," creating a coercive and unequal bargaining environment.

27.    Settlement negotiations which were broken up over two years (2015–2017) focused exclusively on the sound recording. WWE's counsel stated that authorship of the composition, "The Night the Lights Went out in Georgia" belonged solely to Bobby Russell and as such they had a license with the Russell Estate for the composition. The 2017 Settlement Agreement and Release, executed in August 2017, pertained only to the master recording ("Schofield Claims") and not to any underlying musical composition, arrangement, or newly authored elements. Plaintiff and her family were unaware that any further rights existed, relying entirely on the representations and omissions of WWE and its legal team. Plaintiff and her family could not release claims they were unaware of.

28.    During the settlement negotiations, WWE actively misrepresented and downplayed the value of "The Time Is Now," while at the very same time negotiating a high-

value, nationwide commercial licensing deal with Toyota featuring the infringing work. WWE intentionally concealed these material facts from Plaintiff and her counsel, depriving Plaintiff of a fair opportunity to accurately value the claim or demand a royalty share reflecting the true commercial success of the sampled work. The Toyota commercial aired nationally in the U.S. just two days after Plaintiff received the settlement check, but Plaintiff did not discover this fact until years later, as the commercial did not air in Canada and was never disclosed by WWE.

29.    Following the signing of the 2017 settlement, Plaintiff had no further contact with WWE or the other parties, believing the matter to be closed.  Those two years, on and off  had been a very difficult time for the Schofield family as their mother was diagnosed with terminal cancer during the negotiation period and she had to undergo 32 radiation treatments and required around the clock care plus Plaintiff's husband was in the hospital throughout including the night that Plaintiff stated she would sign the agreement as Mrs. Schofield was stressed out by all the legal threats of being taken to court.  Did the family think it was a very low settlement offer, yes we did, however we did not have the ability to take on WWE and go to court.   We had never dealt with anything legal or lawyers and it was unnerving and very upsetting to Plaintiff's mother, who ended up dying in April of 2018.  Plaintiff was relieved it was over and although a low settlement offer, Plaintiff was happy to provide it to her mother before she passed.

30.    It was not until 2023, after learning from a Canadian copyright lawyer that Schofield's arrangement likely contained original, protectable elements, that Plaintiff began to investigate the true nature of the sampled work and her father's potential authorship rights. It was these investigations that eventually led to the discovery of the Toyota commercial on YouTube. Plaintiff wrote directly to WWE's legal counsel, the same attorney who had negotiated the 2017

Settlement Agreement and Release, detailing the profound unfairness of the original settlement, the severe personal and family hardships she faced at the time, and her concerns that WWE had misrepresented the value of the claim after seeing Jake One's video where he claimed he was paid $60,000 and meanwhile the Plaintiff's family only received $50,000 13 years after Jake One received payment. In that letter, Plaintiff openly acknowledged the difficult circumstances surrounding her acceptance of the agreement, but at that time did not know, and could not have known, of the simultaneous high-value national Toyota commercial that WWE was secretly negotiating during the settlement process nor what they had already paid Jake One and when they paid him, in 2003. WWE's counsel responded by dismissing Plaintiff's concerns as mere "seller's remorse" and reiterating the position that all claims, known or unknown, had been released by the settlement. Plaintiff was unaware that TKO was in the process of acquiring WWE during this period. It was only after the discovery of WWE's concealed Toyota deal that Plaintiff realized the negotiations surrounding the 2017 Settlement Agreement and Release were tainted by deliberate material misrepresentations and omissions.

31.    In the summer of 2023, Plaintiff wrote to Pix-Russ and Cynthia Jo Russell to amicably discuss how the arrangement they had been receiving royalties for all these years belonged to Schofield.  Neither of them responded.

32.    In early 2024, Plaintiff wrote again to WWE and was directed to new counsel for TKO. This time formally asserting her claim for fraudulent inducement and demanding rescission of the settlement, not because of dissatisfaction with the terms or her family's hardships, but because of WWE's deliberate concealment of facts critical to the valuation and negotiation of her claim. WWE again refused to substantively address these allegations,

instructing Plaintiff to obtain legal counsel. Plaintiff made multiple good faith attempts to resolve these issues informally, but WWE/TKO consistently declined to participate in meaningful dialogue.

33.    WWE has repeatedly asserted that Plaintiff's challenge to the 2017 Settlement Agreement and Release is simply a matter of "seller's remorse." This is incorrect. Plaintiff is not challenging the Settlement Agreement and Release due to dissatisfaction with the settlement, but rather on the basis of WWE's active concealment of material facts and misrepresentation of the value of the sampled work during the negotiations. By deliberately withholding this information and downplaying the song's value, WWE induced Plaintiff to enter into the settlement agreement on fundamentally unfair terms. Under New York law, the intentional concealment of such material facts, particularly when exclusively known to one party and critical to the other's decision-making, constitutes fraudulent inducement warranting rescission of the agreement.

34.    When Plaintiff understood her rights in the original musical material added by Schofield, she promptly acted on this knowledge and in July 2024 obtained U.S. copyright registration PAu 4-240-368 for the original intro and outro horn arrangement in Schofield's recording (excluding any of Bobby Russell's preexisting melody). When Plaintiff realized, she would have to register the sound recording to proceed with litigation, she successfully registered the master sound recording for Schofield's recording SR 0-412-915 in July 2025. These registrations were obtained honestly and in full compliance with Copyright Office guidance. At every stage, Plaintiff acted with diligence and transparency, disclosing the scope of her claim and limiting her registration only to those portions that were newly authored by Schofield.

35.    With the copyright registration in hand, Plaintiff retained attorney John Pelosi on contingency in late 2024. He began by sending cease and desist letters to the third parties and

attempted to negotiate with WWE counsel.  WWE and their legal counsel escalated their threats, accusing Plaintiff of copyright fraud, threatening sanctions and legal action, and characterizing Plaintiff's registrations as "illegal derivative works."  Plaintiff's legal representation was repeatedly hampered by misunderstandings and withdrawal of counsel. Attorney John Pelosi, misconstrued Plaintiff's claim as a "derivative work" registration rather than a lawful cover with original elements. WWE used this mischaracterization to further threaten Plaintiff and to deny her rights. After several months, Pelosi withdrew in April 2025, leaving Plaintiff to proceed pro se.  Counsel for WWE demanded, in writing, that Plaintiff withdraw her copyright registration, alleging fraudulent procurement, and further accused Plaintiff of harassment and tortious interference with WWE's business relationships.


36.    WWE's actions included releasing a 2019 re-recorded version of "The Time Is Now" (under the title "CHAMP IS HERE"), in breach of the 2017 Settlement Agreement's express prohibition on re-recordings; failure to credit Pete Schofield on physical media as required; and refusing to acknowledge or account for the original authorship of the sampled elements

37.    In 2025, Plaintiff was contacted multiple times by counsel for the Russell Defendants. On October 21, 2025, their counsel issued a formal demand letter accusing Plaintiff of copyright infringement and asserting that both the 1974 Schofield horn arrangement and the 1974 Schofield master recording are "unauthorized derivative works" that allegedly violate the Bobby Russell composition.  The letter categorically rejected the originality of the intro and outro created by Schofield, claimed the arrangement contains "no independent or original

authorship," and asserted that every element of Schofield's recording was derivative of the Russell composition. Counsel further represented that the Estate had retained a private "musicology report" allegedly concluding that Schofield's added material lacked originality, despite the Estate having accepted royalties generated by the usage of those same arrangement elements in the infringing work for decades.

38.    The October 21, 2025, demand letter also asserted that because Plaintiff could not produce a surviving copy of a compulsory mechanical license from 1974, "the Schofield Arrangement constitutes an unauthorized derivative work," and therefore "the act of creating the Schofield Arrangement constitutes copyright infringement" of the Russell composition. This position directly contradicts industry practice under the 1909 Copyright Act, under which Schofield recorded the cover lawfully at Sound Canada, a union studio affiliated with Harry Fox, BMI, and ASCAP, and fully compliant with AFM requirements. The letter went even further, claiming that Plaintiff's registration of the 1974 Schofield master recording, SR 0-412-915 was also invalid because it was "derived" from the arrangement registration, and that the sound recording itself was an "illegal derivative work." By this logic, the letter implicitly asserts that WWE's 2005–2025 commercial use of the Schofield Master (including the Sniderman license WWE relied upon) has been unlawful for twenty years, yet Pix-Russ and Cynthia Jo Russell never once notified Plaintiff or WWE of any such alleged illegality during that time, while simultaneously accepting royalty payments derived from the sampled arrangement.

39.    The Russell Defendants demanded in writing that Plaintiff withdraw both of her copyright registrations (PAu 4-240-368 for the arrangement and SR 0-412-915 for the master recording), threatening immediate federal litigation if she failed to do so. Their counsel insisted

that Plaintiff notify the U.S. Copyright Office and provide written proof of withdrawal. These demands were made despite the Estate's decades-long acceptance of royalties generated by the sampled Schofield arrangement, and despite Plaintiff's repeated explanations that: (a) the 1974 recording was a lawful cover created under the compulsory license regime in place at the time; and (b) Plaintiff's registration expressly excludes all material belonging to Bobby Russell. The threats to withdraw registrations under claims of illegality, combined with the Estate's long history of financially benefiting from the Schofield arrangement, demonstrate an active, ongoing, substantial controversy requiring judicial intervention through a declaratory judgment to resolve the parties' competing claims of ownership, validity, and infringement.

40.     As a direct result of Defendants' willful infringement, fraudulent inducement, bad faith concealment, breach of contract, wrongful royalty collection, and repeated threats to invalidate Plaintiff's copyright, Plaintiff has suffered substantial financial and reputational harm. Every effort at informal resolution has been met with threats, misrepresentations, and intimidation tactics, leaving Plaintiff with no recourse but to seek relief from this Court, including a declaratory judgment as to her valid authorship and rights in the Schofield arrangement and master recording, and relief for unjust enrichment, breach of contract, and willful copyright infringement.

## CAUSES OF ACTION

### COUNT I - Fraudulent Inducement (Rescission)

41.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

42.     In or about 2003, Defendant World Wrestling Entertainment, Inc. ("WWE"), acting in concert with Defendant John Cena and producer Jacob Brian Dutton ("Jake One"), caused Schofield's 1974 horn arrangement of "The Night the Lights Went Out in Georgia" to be sampled and incorporated into the beat for the track later titled "The Time Is Now". At that time, neither WWE, Cena, nor any other party had secured any license for the use of the Schofield recording, or the original musical elements contained therein.

43.     The sampled material consisted of the distinctive horn-based intro and outro authored by Pete Schofield in January 1974—original in orchestration, melody, and harmony, and wholly distinct from Bobby Russell's underlying composition. These original elements constitute independent musical authorship under the law, separate from Russell's work.

44.     WWE, Cena, and Jake One knew these sampled elements were Schofield's work. Jake One has publicly admitted that he used Schofield's arrangement, and in his own beat breakdown video (unavailable to Plaintiff until August 2023) demonstrated the sampling of the Schofield intro and outro. WWE and Cena, having commissioned and used this beat since 2003, were on notice of its source and originality.

45.     In 2017, during settlement negotiations over the sound recording claim, Plaintiff's counsel inquired whether Pete Schofield could be credited as a writer for recognition purposes only. WWE responded that Schofield "did not write The Night the Lights Went Out in Georgia," and that the matter concerned only the sound recording. Plaintiff's counsel confirmed the same. Plaintiff reasonably relied on these statements and was never advised that the intro and outro could carry independent composition rights.

46.    At no point during those negotiations did WWE, Cena, or their counsel disclose:

a.    That the sample/recording had been made and exploited since 2003 without any license;

b.    That the sampled portions were wholly original Schofield-authored musical elements;

c.    That WWE had already secured, or would secure, a composition license from the Russell estate while never contacting the Schofield Estate; or

d.    That WWE was actively negotiating a national Toyota commercial synchronization license for "The Time Is Now" during the settlement discussions with Schofield Estate.

47.    As a direct result of these misrepresentations and omissions, Plaintiff entered into the August 2017 Settlement Agreement and Release under a fundamental misunderstanding of the nature and scope of her rights, believing she had no claim to any part of the composition and that the only issue was the sound recording.

48.    Plaintiff did not discover the truth until 2023, upon viewing Jake One's video and learning that the sampled intro and outro were Schofield's original authorship. Plaintiff immediately attempted to contact WWE/TKO and the Russell estate to discuss the matter. When it became clear that registration was necessary, Plaintiff truthfully and specifically registered only the Schofield-authored intro and outro with the U.S. Copyright Office in 2024.

49.    Plaintiff has never claimed ownership of Russell's composition. The 2024 registration explicitly covers only the Schofield-authored intro and outro, neither of which appear in Russell's original work.

50.     The concealment of the early unlicensed recording, the misrepresentation of Schofield's authorship, and the failure to disclose concurrent commercial negotiations involved material facts that were exclusively within the knowledge of WWE, Cena, and Jake One.

51.     Plaintiff's reliance on WWE's statements and on her counsel's assurances were reasonable under the circumstances, given WWE's exclusive possession of the relevant facts, the absence of any public admission by Jake One until 2023, and the complete lack of any disclosure to the Estate regarding the original musical authorship at issue.

52.     These material misrepresentations and omissions warrant rescission of the 2017 Settlement Agreement and Release on the grounds of fraudulent inducement, concealment of material facts, and mutual mistake.

## COUNT II - COPYRIGHT INFRINGEMENT – ORIGINAL MUSICAL ELEMENTS AND SOUND RECORDING

53.     This is an action for damages, declaratory relief, and permanent injunctive relief and is brought by Plaintiff pursuant to the Copyright Act and Copyright Revision Act, 17 U.S.C. § 101, et seq. (the "Act").

54.     A copyright in the newly added elements from Schofield's arrangement (specifically, the original horn-based introduction and outro of "The Night the Lights Went Out in Georgia") was registered with the U.S. Copyright Office on July 24, 2024, under Registration Number PAu 4-240-368.  This registration was completed after Plaintiff discovered, in 2023, for the first time, that these sampled musical elements were independently copyrightable and distinct from the underlying Bobby Russell composition.

55.    Upon information and belief, Defendants are the creator, performer, purported publishers, purported administrator, label, and distributor of the Infringing Work and have infringed the copyright in the Infringed Work in a number of ways including the following:

a.   By substantial copying and public performances and by authorizing the copying and public performances;

b.   The manufacture, distribution, and sale (and/or authorizing others to do so) of the Album and the Infringing Work;

c.   Authorizing and/or licensing the Infringing Work for digital download and ringtones;

d.   By publishing and/or administering the Infringing Work and commercially exploiting the Infringing Work;

e.   By utilizing, authorizing, or licensing the Infringing Work for synchronization with audiovisual works, TV commercials, toys, and video games;

f.   By causing and/or materially contributing to and/or by substantially participating in and furthering the abovementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of the Infringed Work in and as part of the Infringing Work contained on the Albums, and through multiple public performances over cable television and pay-per-view programs, including Netflix and Peacock Network.

Further, such Defendants had the obligation, right, and ability to supervise such infringing activity but allowed the infringements to occur, and they had an obvious and direct financial interest in exploiting the copyrighted materials as set forth above. Accordingly, Defendants are liable for direct, contributory, and vicarious infringement.

56.     Upon information and belief, the Defendants have received and continue to receive advances, royalties, and other payments for sale of the Infringing Work; have received and will continue to receive advances, royalties, and other payments for the inclusion of the Infringing Work in print editions of sheet music; have received synchronization royalties for use of the Infringing Work in audiovisual works and commercial works; and have received and continue to receive public performance royalties from performances of the Infringing Work, among other revenue sources known only to Defendants, without accounting for and remitting the appropriate amount of such royalties to Plaintiff in the Infringing Work. Upon information and belief, Defendant publishers have received royalties for the licensing of the Infringing Work for digital downloads and ringtones.

57.     By reason of the infringement and threatened infringement of the Defendants, Plaintiff has sustained and will continue to sustain substantial injury, loss, and damage to her rights in the Infringed Work.

58.     Further irreparable harm to Plaintiff is imminent as a result of Defendants' conduct, and Plaintiff is without adequate remedy at law. Plaintiff is entitled to an injunction restraining Defendants, their officers, directors, agents, employees, and representatives, and all persons acting in concert with them, from engaging in further acts of copyright infringement.

59.     Plaintiff is further entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' acts of copyright infringement. Plaintiff is at present unable to ascertain the full extent of the monetary damage Plaintiff has suffered by reason of Defendants' acts of copyright infringement but knows such damages exceed $150,000.

60.     Plaintiff is further entitled to recover from Defendants the gains, profits, and advantages obtained as a result of their acts of copyright infringement. Plaintiff is at present unable to ascertain the full extent of the gains, profits, and advantages Defendants have obtained by reason of their acts of copyright infringement, but Plaintiff is informed and believes Defendants have obtained such gains, profits, and advantages in an amount exceeding $150,000.

61.     Alternatively, pursuant to 17 U.S.C. § 504, Plaintiff is entitled to statutory damages of not less than $750 nor more than $30,000 for each infringement and, in the event the Court finds the infringement was committed willfully, for statutory damages not exceeding $150,000 for each infringement.

### COUNT III – Breach of 2017 Settlement Agreement

62.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

63.     The 2017 Settlement Agreement between Plaintiff and Defendant WWE constitutes a valid written contract under New York law. Paragraph 4 of the Agreement expressly allows WWE to create re-edits or remixes of the licensed sample in *The Time Is Now* but explicitly prohibits any re-recording of the sample.

64.     In or about March 2024, Plaintiff discovered that WWE had materially breached Paragraph 4 by releasing a new track entitled *The Time Is Now [Champ Is Here]*, which does not use the licensed sample at all but instead contains a newly recorded, synthesized imitation of the original horn parts. This constitutes a material breach because it defeats a central purpose of the

settlement — to limit WWE's future use of the sample to remixes or re-edits only, not new recordings.

65.    Paragraph 6 of the 2017 Settlement Agreement requires WWE to ensure that "PS Records" is credited on any newly manufactured physical products containing *The Time Is Now*. This provision was intended to guarantee public recognition for Pete Schofield and the original recording. In or about August 2023, Plaintiff purchased a WWE-produced DVD manufactured after the Settlement's effective date. The DVD contained multiple uses of *The Time Is Now* but did not include the required "PS Records" or Pete Schofield credit. This omission constitutes a material breach because it defeats the settlement's express purpose of providing attribution.

66.    Both breaches described herein are ongoing in nature: the unauthorized *Champ Is Here* version remains available for commercial exploitation, and physical products continue to be sold without the agreed credit. Under New York law, these are material breaches that entitle Plaintiff to damages, equitable relief, and, if proven intentional, potentially rescission of the Settlement Agreement.

67.    Plaintiff notified WWE in writing of these breaches in 2023 and 2024, yet WWE failed and refused to cure the breaches or provide any remedy. WWE's failure to perform its contractual obligations without legal justification entitles Plaintiff to seek all remedies available under New York law, including but not limited to:

a.    Direct and consequential damages;

b.    Injunctive relief requiring the cessation of the *Champ Is Here* version and correction of product credits; and

c.    Rescission of the Settlement Agreement due to material breach.

## COUNT IV – Unjust Enrichment

68.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

69.    As set forth above, Defendants knowingly and wrongfully exploited Pete Schofield's original musical arrangement—specifically two horn-based sections, an original intro and a completely original outro, created and recorded by Schofield in 1974—without license, credit, or compensation to the Schofield Estate.

70.    These sampled musical elements were not part of Bobby Russell's original copyrighted composition and were authored solely by Pete Schofield. Nevertheless, Defendants used them as the core instrumental bed for the track "The Time Is Now" and directed all authorship credit and publishing royalties to Bobby Russell and his estate for nearly two decades.

71.    All Defendants have generated substantial revenue and long-term commercial gain through the use of this unlicensed and uncredited material. This includes, but is not limited to, global broadcast performances, pay-per-view events, physical products, digital streaming, synchronization in commercials and media, merchandising, and appearances in video games, toys, social media, and televised content.

72.    While the Plaintiff's family received a one-time $50,000 settlement payment in 2017, that amount was negotiated and accepted under materially false and incomplete information.  Defendant, WWE failed to disclose the track's unauthorized 2003–2004 recording, the distinct compositional value of the arrangement, or the extent of its commercial exploitation, including a lucrative Toyota synchronization deal negotiated contemporaneously. The $50,000

payment does not reflect the actual value of the work, the scope of its use, or the Estate's rightful entitlement to credit and royalties. To allow Defendants to retain all resulting profits while citing a limited, misinformed settlement would result in unjust enrichment.

73.    During the 2017 settlement negotiations, Defendant WWE and their counsel deliberately concealed critical facts regarding the commercial value and licensing history of the song, "The Time is Now".  Specifically, at no point did they disclose that the sample had been used since 2003 without a license and crucially, while negotiating a settlement with Plaintiff that minimized and downplayed the value of the work, WWE were simultaneously and actively negotiating a national Toyota commercial synchronization license for "The Time is Now". Plaintiff only discovered the existence of this commercial years later, as it is believed to Plaintiff's knowledge, the campaign did not air in Canada, substantiating the claim that this material fact was not reasonably discoverable at the time of the settlement discussions.  As a direct result of these material misrepresentations and deliberate omissions, Plaintiff entered into the August 2017 Settlement Agreement and Release under a fundamental misunderstanding of the true nature, scope and commercial value in the sound recording

74.    Upon information and belief, all composition royalties, licensing fees, and authorship credits arising from the use of the sampled horn material in "The Time Is Now" were directed to Bobby Russell's estate, administered by Pix-Russ Music and Cynthia Jo Russell. These royalties and credits were issued even though the sampled musical material—the original horn intro and outro—was not written by Bobby Russell and does not appear in his copyrighted composition. As a result, the financial and reputational benefits derived from Pete Schofield's

original authorship were wrongfully diverted to third parties who had no creative connection to the sampled material. The Plaintiff asserts that these benefits rightfully belonged to the Plaintiff.

75.    Even if the Court ultimately upholds the 2017 Settlement Agreement, equity demands that Defendants not be permitted to retain the substantial benefits derived from Pete Schofield's original work without fair compensation to the Estate. Defendants' continued retention of these benefits, without providing credit or royalty participation to the true author, would result in unjust enrichment.

76.    The Plaintiff had no knowledge of the separate compositional rights at the time of settlement and reasonably relied on WWE's misstatements, omissions, and framing of the dispute as solely about sound recording rights. That reliance was further supported by Plaintiff's own attorneys, who, while well-meaning, lacked awareness of the concealed facts and were misled by WWE's representations.

77.    Defendants' conduct constitutes a textbook case of unjust enrichment: they received and continue to receive substantial financial gain from the work of another, without license or acknowledgement, and at the direct expense of the rightful author's estate.

78.    Equity and good conscience demand that Defendants be required to disgorge the financial gains and benefits obtained through their ongoing exploitation of Schofield's original musical arrangement.

79.    Plaintiff respectfully seeks restitution in the form of disgorgement of profits wrongfully obtained by Defendants, an accounting of all revenue derived from the infringing use of Schofield's original musical material, and such other relief as the Court deems just and proper.

## COUNT V (Declaratory Judgment – 28 U.S.C. §§ 2201–2202)

80.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

81.    An actual and justiciable controversy exists between Plaintiff and Defendants concerning the rights of the Plaintiff in connection with the authorship, exploitation, licensing, and attribution of the musical material sampled and embodied in the track titled "The Time Is Now" (the "Infringing Work").

82.    Plaintiff contends that the original horn-based musical elements appearing in the Infringing Work—specifically the horn intro and horn outro—were authored and recorded in 1974 by Pete Schofield and are not part of Bobby Russell's copyrighted composition. Plaintiff further contends that these original musical elements were used without license or credit from the Plaintiff, and that the Plaintiff retains all rights under U.S. and Canadian copyright law to such original authorship.

83.    Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202 that: (a) Pete Schofield is the sole author of the original horn-based musical elements sampled in "The Time Is Now", including the horn intro and horn outro; (b) these original musical elements are not derived from nor substantially similar to Bobby Russell's copyrighted composition "The Night the Lights Went Out in Georgia"; (c) Plaintiff owns all rights, title, and interest in these original musical elements under U.S. and Canadian copyright law; and (d) the Plaintiff owns all rights, title and interest in the copyright registration (Reg. No. PAu 4-240-368) validly and lawfully protects these elements as an original unpublished musical work. Declaratory relief is

necessary and appropriate to clarify the parties' legal rights, resolve an actual controversy, and prevent ongoing misattribution and misappropriation of authorship and royalty rights.

84.    A judicial declaration is necessary and appropriate to resolve these ongoing disputes and to clarify the parties' respective rights under the Copyright Act, the 2017 Settlement Agreement, and applicable principles of contract and equity.

85.    Accordingly, Plaintiff seeks a declaration from this Court that:

(a)   Pete Schofield is the sole author of the horn-based musical elements embodied in "The Time Is Now", including the original intro and outro recorded in 1974.

(b)   These musical elements are distinct from, and not part of, Bobby Russell's original copyrighted composition "The Night the Lights Went Out in Georgia".

(c)   Plaintiff retains all rights of ownership in these musical elements, including rights of attribution, licensing, and compensation.

(d)   The 2017 Settlement Agreement does not bar Plaintiff's composition claim, or in the alternative, is void or subject to rescission due to fraud, concealment, mistake, and breach.

(e)   Defendants' continued exploitation of the Infringing Work without proper credit or compensation violates Plaintiff's legal and equitable rights.

## VI. PRAYER FOR RELIEF

86.    WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

87.    That the Court rescind the 2017 Settlement Agreement and General Release based on fraudulent inducement, fraudulent misrepresentation and concealment of material facts.

88.    That the Court declare the 2017 Settlement Agreement and General Release void and unenforceable as to the composition rights in the original horn-based musical elements authored by Pete Schofield.

89.    That the Court enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201–2202 that Pete Schofield is the sole author of the original horn-based intro and outro used in "The Time Is Now," and that these original musical elements are copyrightable as a matter of law and entitled to the protection granted under U.S. Copyright law.

90.    That the Court enter judgment that Defendants infringed Plaintiff's copyright in the Schofield Arrangement, as registered with the U.S. Copyright Office under Registration Number PAu 4-240-368.

91.    That the Court award Plaintiff actual damages and Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b), or in the alternative, statutory damages under 17 U.S.C. § 504(c), including enhanced damages for willful infringement in an amount to be proven at trial, not to exceed $150,000 per act of infringement.

92.    That the Court award restitution and require Defendants to disgorge all gains, profits, and benefits derived from the unauthorized use of Pete Schofield's musical work, including but not limited to royalties, licensing fees, synchronization income, and streaming revenue.

93.     That the Court grant injunctive relief prohibiting Defendants, their officers, agents, servants, employees, successors and assigns, and all persons acting in concert or participation with them, from further exploiting the Schofield Arrangement without proper credit, compensation, or license.

94.     That the Court order Defendants to provide an accounting of all revenues derived from the use of the Schofield recording and Arrangement, including but not limited to mechanical royalties, synchronization fees, public performance royalties, merchandise sales, digital downloads, ringtones, physical products, and all other commercial uses.

95.     That the Court award Plaintiff all costs and expenses of this action, including reasonable attorneys' fees under 17 U.S.C. § 505.

96.     That the Court permit Defendants to offset the rescinded $50,000 settlement payment against any damages awarded, as appropriate under equitable principles.

97.     That the Court grant such other and further relief as it deems just and proper.

98.     That the Court award Plaintiff the costs of this action, including reasonable attorneys' fees as permitted by 17 U.S.C. § 505 and other applicable law.

99.     That the Court award Plaintiff the costs of this action, including reasonable attorneys' fees as permitted by 17 U.S.C. § 505 and other applicable law.

JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  December 1, 2025, in Ajax, Ontario Canada

Respectfully submitted,


*KL Schofield*
_____

Kim Schofield
35 Darley Street,
Ajax, Ontario Canada
L1T 3X9
Tel: (905) 686-1370
Email: kim@peteschofieldandthecanadians.com
Plaintiff, Pro Se