UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
KIM SCHOFIELD,

Plaintiff,

v.

WORLD WRESTLING ENTERTAINMENT LLC, JOHN CENA, and TKO GROUP HOLDINGS, INC.,

Defendants.
------------------------------------------------------X

Case No. 1:25-cv-10038-RA
Related case: 1:25-cv-07422-RA

**MEMORANDUM OF ALL DEFENDANTS IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM**

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

/s/ *James von der Heydt*
James von der Heydt (*pro hac vice*)
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Phone: 216-363-4500
jvonderheydt@beneschlaw.com

Matthew Fox
Maya E. Rivera
Benesch, Friedlander, Coplan & Aronoff, LLP
1155 Avenue of the Americas, Floor 26
New York, New York 10036
Phone: 646-593-7050
mfox@beneschlaw.com
mrivera@beneschlaw.com

# TABLE OF CONTENTS


**Page(s)**

I. FACTS ALLEGED OR INCORPORATED IN THE COMPLAINT ..... 3

II. LEGAL STANDARD ..... 8

III. LAW AND ARGUMENT ..... 8

A. The 2017 License Forecloses This Case at the Threshold ..... 9

1. In 2017, Plaintiff Released All Her Claims and Licensed All Her Rights in the Sample ..... 10

2. Even a Plaintiff Actually Defrauded into a Copyright License Has No Copyright Claim ..... 11

B. The Fraud Claim Purportedly Reviving the Dispute Is Time-Barred ..... 12

C. No Fraud Is Alleged ..... 14

1. Elements of Fraudulent Inducement and Concealment ..... 15

2. The Table of Dollars Offered as a Settlement Was Not Fraud ..... 17

3. A Statement about Past "Negligible" Value Was Not Deception about Current Value ..... 19

4. Failure to Volunteer Future Revenue Plans Was Not Fraud ..... 20

D. The Contract and Unjust Enrichment Theories Fail to State a Claim ..... 21

1. Plaintiff Fails to Allege Any Instance of a License Violation ..... 22

2. The Unjust-Enrichment Claims Fail as a Matter of Law ..... 23

E. TKO is Not a Proper Defendant ..... 24

IV. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
404 F.3d 566 (2d Cir. 2005) .......... 16, 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 22

*BanxCorp v. Costco Wholesale Corp.*,
723 F. Supp. 2d 596 (S.D.N.Y. 2010) .......... 24

*Barshay v. Naithani*,
2023 WL 2051170 (S.D.N.Y. Feb. 16, 2023) .......... 10

*Bendit v. Canva, Inc.*,
No. 23-CV-473 (RA), 2023 WL 5391413 (S.D.N.Y. Aug. 22, 2023) .......... 10, 11

*Bracken v. MH Pillars Inc.*,
290 F. Supp. 3d 258 (S.D.N.Y. 2017) .......... 24

*Brass v. Am. Film Techs., Inc.*,
987 F.2d 142 (2d Cir. 1993) .......... 17, 19

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) .......... 8

*Chartwell RX, LLC v. Inmar, Inc.*,
620 F. Supp. 3d 59 (S.D.N.Y. 2022) .......... 17

*Clark-Fitzpatrick, Inc. v. Long Island Railroad Co.*,
70 N.Y.2d 382 (1989) .......... 24

*Conte v. Tapps Supermarket*,
No. 22-CV-3109 2023 WL 6140182 (E.D.N.Y. Sept. 20, 2023) .......... 16

*Conte v. Tapps Supermarket*,
No. 22-CV-3109, 2023 WL 6594351 (E.D.N.Y. July 3, 2023) .......... 16

*Conte v. Tapps Supermarket*,
No. 23-1341-CV, 2024 WL 4179720 (2d Cir. Sept. 13, 2024) .......... 13, 14, 16

*Elliott v. Nestle Waters N. Am. Inc.*,
No. 13 CIV. 6331 RA, 2014 WL 1795297 (S.D.N.Y. May 6, 2014) .......... 12

*First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*,
52 F. Supp. 3d 625 (S.D.N.Y. 2014) .......... 16, 20, 21

*Foley v. Wilson*, No. 18-CV-504 (RA),
2020 WL 30338 (S.D.N.Y. Jan. 2, 2020) ........................................................................ 24

*Freeman v. Complex Computing Co.*,
119 F.3d 1044 (2d Cir.1997) ........................................................................................... 25

*Genao v. Ruiz*,
No. 24-CV-2077 (LJL), 2025 WL 219160 (S.D.N.Y. Jan. 16, 2025) .............................. 15, 20

*Ghartey v. St. John's Queens Hosp.*,
869 F.2d 160 (2d Cir. 1989) ............................................................................................ 12

*Glob. Mins. & Metals Corp. v. Holme*,
35 A.D.3d 93 (N.Y. App. Div. 2006) ............................................................................... 10

*Global Network Communs., Inc. v. City of New York*,
458 F.3d 150 (2d. Cir. 2006) ............................................................................................. 4

*Graham v. James*,
144 F.3d 229 (2d Cir. 1998) ............................................................................................ 11

*Great Lakes Reinsurance (UK) SE v. Herzig*,
764 F. Supp. 3d 164 (S.D.N.Y. 2025) ............................................................................. 10

*Grewal v. Cuneo Gilbert & LaDuca LLP*,
803 F. App'x 457 (2d Cir. 2020) ...................................................................................... 15

*Grewal v. Cuneo*,
No. 13-CV-6836 RA, 2015 WL 4103660 (S.D.N.Y. July 7, 2015) ....................................... 15

*Gusler v. Fischer*,
580 F. Supp. 2d 309 (S.D.N.Y. 2008) .............................................................................. 24

*Hill v. Kelly*,
580 N.Y.S.2d 665 (3d Dep't 1992) .................................................................................. 10

*Jana L. v. W. 129th St. Realty Corp.*,
802 N.Y.S.2d 132 (2005) ................................................................................................. 17

*Lemon v. Hollinger*,
No. 17-CV-4725 (RA), 2017 WL 6547741 (S.D.N.Y. Dec. 19, 2017) .................................. 17

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006) ............................................................................................ 17

*LMM Cap. Partners, LLC v. Mill Point Cap., LLC*,
207 N.Y.S.3d 38 (1st Dep't 2024) .................................................................................... 16

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*,
797 F.3d 160 (2d Cir. 2015) ........................................................................................ 17

*Nicholas v. Nynex, Inc.*,
929 F.Supp. 727 (S.D.N.Y.1996) ........................................................................... 10, 21

*Optionality Consulting Pte. Ltd. v. Nekos*,
No. 18-CV-5393 (ALC), 2019 WL 4523469 (S.D.N.Y. Sept. 18, 2019).................................. 3

*Order of R.R. Telegraphers v. Ry. Express Agency*,
321 U.S. 342 (1944)...................................................................................................... 12

*Raghavendra v. Trs. of Columbia Univ.*,
434 F. App'x 31 (2d Cir. 2011) ..................................................................................... 10

*Raghavendra v. Trs. of Columbia Univ.*,
686 F. Supp. 2d 332 (S.D.N.Y. 2010) ............................................................................ 10

*Romain v. Webster Bank N.A.*,
No. 25-316-CV, 2025 WL 3537344 (2d Cir. Dec. 10, 2025)................................................ 20

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004) ......................................................................................... 15

*Rostami v. Open Props, Inc.*,
No. 22-CV-3326 (RA), 2024 WL 1313713 (S.D.N.Y. Mar. 26, 2024)..................................... 8

*Sira v. Morton*,
380 F.3d 57 (2d Cir. 2004) ............................................................................................. 8

*Thea v. Kleinhandler*,
807 F.3d 492, 497 (2d Cir. 2015) ................................................................................... 13

*TVT Recs. v. Island Def Jam Music Grp.*,
412 F.3d 82 (2d Cir. 2005) ....................................................................................... 11, 12

*U.S. ex rel. Clausen v. Lab'y Corp. of Am.*,
290 F.3d 1301 (11th Cir. 2002) ..................................................................................... 19

*Vaughn v. Phoenix House New York Inc.*,
957 F.3d 141 (2d Cir. 2020) ........................................................................................... 8

*Vinci Brands LLC v. Coach Servs., Inc.*,
No. 1:23-cv-5138, 2025 WL 2771621 (S.D.N.Y. Sept. 29, 2025) .............................. 16, 17, 21

*Warren v. John Wiley & Sons, Inc.*,
952 F.Supp.2d 610 (S.D.N.Y. 2013) ........................................................................ 22, 23

*Willgerodt on Behalf of Majority Peoples' Fund for the 21st Century, Inc. v. Hohri*,
953 F. Supp. 557 (S.D.N.Y. 1997) ........................................ 10

*Wright v. Eastman Kodak Co.*,
445 F. Supp. 2d 314 (W.D.N.Y. 2006) ........................................ 10

**Statutes**

N.Y. C.P.L.R. § 202 ........................................ 12

N.Y. C.P.L.R. § 213(8) ........................................ 12, 13, 14

**Rules**

Fed. R. Civ. P. 8(a)(2) ........................................ 22

Fed. R. Civ. P. 9(b) ........................................ 15, 19

Fed. R. Civ. P. 12(b)(6) ........................................ 8

**Treatises**

1 Nimmer on Copyright § 1.01(B)(1)(g) (2008) ........................................ 24

This is a case that should never have been filed. In August 2017, in exchange for a lump-sum payment of $50,000, Plaintiff Kim Schofield entered into a valid, enforceable licensing agreement with Defendant World Wrestling Entertainment LLC, granting WWE a perpetual license to use a sampled recording of horns (the "Sample") from a 1974 version of Bobby Russell's "The Night the Lights Went Out in Georgia." On behalf of her family, she released all claims "of every kind, character and manner whatsoever" related to the Sample. That agreement—which Ms. Schofield signed with the advice of counsel, after two years of negotiation—is fatal to every theory in the Fourth Amended Complaint. Her copyright claim cannot proceed because an unrescinded license is a complete defense; her contract-breach allegations do not identify any conduct that runs afoul of the agreement's actual terms; and her unjust enrichment claim fails because of the valid contract governing the same subject matter. Without exception, the licensing agreement attached as Exhibit A to the Fourth Amended Complaint bars Schofield's claims outright.

In an attempt to resurrect her settled, released, and expired claims about "The Time Is Now," Plaintiff has developed another time-barred cause of action: a claim for "fraudulent inducement" of the August 2017 licensing agreement (the "License"). She relies on the discovery rule to extend the statute of limitations, but the Fourth Amended Complaint's own allegations establish that by the middle of 2023, Ms. Schofield had learned all the facts supposedly revealing WWE's alleged fraud. On August 20 of that year she wrote to WWE describing all the insights she now says she needed to identify her claim. Under N.Y. CPLR § 213(8), her full awareness at that time triggered a two-year filing deadline of August 2025. This case was filed three months beyond that cutoff. No amount of creative pleading can cure that deficiency. The statute of limitations exists to prevent parties from reviving stale claims long after the relevant events, and Plaintiff's belated regret over a deal she freely struck cannot override that bedrock principle.

Plaintiff's fraudulent-inducement claim fails on its face, too. The Fourth Amended Complaint shows time and again that, just as she misreads the contract, Plaintiff misreads the written correspondence between lawyers that she now calls fraud. Her interpretations in the body of the pleading are squarely contradicted by the documents themselves: as a result, the Fourth Amended Complaint identifies no false statement with the specificity Rule 9(b) demands, alleges no facts giving rise to the required strong inference of fraudulent intent, and fails to plead the reasonable reliance necessary to plead fraud. It can never be reasonable to rely on a groundless misunderstanding of a counterparty's statement.

Stripped of conclusory characterizations, the alleged "fraud" amounts to this: In a contested, arm's-length negotiation between represented parties, WWE (1) answered the specific question Plaintiff's attorney asked about the value of a pending settlement offer; and (2) did not volunteer unrequested information about past and future transactions. Plaintiff has not alleged that WWE made any false statement, or that it owed her any fiduciary obligation or duty to disclose extra information she now considers important. New York law does not require arm's-length contracting parties to volunteer their future plans to a counterparty. Incorporating the actual written statements by reference, so the Court can see for itself what was said and why, the Fourth Amended Complaint discloses an ordinary, hard-fought contract negotiation, with no deception.

Any one of these independently sufficient grounds warrants dismissal with prejudice. Together, they leave no doubt that Ms. Schofield received exactly what she bargained for and agreed to: a lump-sum payment in exchange for a perpetual license and full release. Nine years later, having reconsidered that bargain, she asks the Court to unwind it based on a fraud theory that is untimely; fails to allege falsity, reasonable reliance, or deceptive intent; and cannot state a legal claim. The Court should decline the invitation and dismiss the case with prejudice.

## I. FACTS ALLEGED OR INCORPORATED IN THE COMPLAINT

In 2015, Ms. Schofield and her counsel contacted WWE to assert claims of ownership in the Sample; ensuing negotiations over a license continued all the way into the summer of 2017. (Fourth Am. Compl., ¶¶ 32-33.) In August of that year, Ms. Schofield received a lump-sum payment and signed a contract licensing any existing rights to WWE and releasing all claims. (*See id.* Ex. A, License; *see also* Ex. A at ¶ 2 (confirmation that Ms. Schofield "has been independently advised by counsel… in whom [she] has full and complete confidence, with respect to this Agreement and all matters embraced by it").)

In the License, in exchange for $50,000, Ms. Schofield granted WWE the "perpetual" "unrestricted right" to use, sublicense, and "otherwise exploit" the Sample without any further "payment of any kind for any reason to [the] Schofield [family]." (*Id.* Ex. A ¶ 4.) Additionally, the family "RELEASE[D] and FOREVER DISCHARGE[D]" all WWE affiliates from all claims "of every kind, character and manner whatsoever" related to any alleged infringement of any Schofield rights in the Sample. (*Id.* ¶ 7.)

The gist of the allegations in the Fourth Amended Complaint is that, in written correspondence in 2016 and 2017, WWE downplayed to Plaintiff and her two attorneys the Sample's past and potential value, coaxing her via alleged deceptions into accepting the final offered price. To support its "fraud in the inducement" theories, the Fourth Amended Complaint identifies the following alleged misrepresentations and omissions:

- WWE's counsel sent a summary of royalty revenues (*id.* Ex. D) as an attachment to an email dated April 10, 2016. (*See* email and attachment at **Exhibit A** hereto.)[1]

[1] The Complaint incorporates this document by reference, alleging that the tabulation was "provided" to mislead Plaintiff in 2016. (Fourth Am. Compl. ¶ 30 & Ex. D.) This email transmission is alleged to be a central instance of fraud and can be considered at the motion-to-dismiss stage to assess compliance with Fed. R. Civ. P. 9(b). *See, e.g.*, *Optionality Consulting Pte. Ltd. v. Nekos*, No. 18-CV-5393 (ALC), 2019 WL 4523469, at *6 (S.D.N.Y. Sept. 18, 2019) (where complaint referenced a certain document without attaching it, and allegations centered on the

◊ Plaintiff alleges that this document should have disclosed other types of revenue and extended back before 2012. (Fourth Am. Compl. ¶¶ 39–43.) And she implies it was deceptive to withhold what she calls "other valuation facts" related to past and future transactions. (*Id.* ¶ 34.)

◊ The cover email, however, shows that WWE sent the table constituting Exhibit D as a response to a question Ms. Schofield's counsel asked about a particular settlement offer. Plaintiff's attorney had written as follows:

> "My client has no way of evaluating the actual monetary value of what your clients are offering …. Accordingly, please ask your clients on a 'without prejudice' basis to provide an itemized computation of *the monetary value of the offer* through the present date. This will allow my client to intelligently assess what is on offer."

(Ex. A hereto (emphasis added).)

◊ WWE's counsel wrote back: "In response to your email below, attached is a chart reflecting the calculation of royalties *that would be payable under the terms of my March 18, 2016 letter*." (*Id.* (emphasis added); *see also* Fourth Am. Compl. Ex. E (referencing a settlement proposal laying out "financial terms … retroactive to July 1, 2012").)

◊ Other than this written exchange, Plaintiff alleges no other context in which WWE attributed any other significance to the April 10, 2016 royalty summary—only that it answered the question her attorney asked about "the monetary value of the [then-pending settlement] offer through the present date."

◊ The Fourth Amended Complaint calls the table, now missing the cover note that came with it, a "selective disclosure of limited royalty figures while withholding commercial licensing information" about potential future use. (*Id.* ¶ 79.)

- In another 2016 letter, over a year before the License was signed, WWE's counsel disputed Plaintiff's attorney's theory that Mr. Cena's use of the Sample after 2004 had somehow *reduced* its value. As of 2004, WWE pointed out, it was a "sample of an unknown and

---

"transmission" of that document, "the Court may consider both the [document] and its cover email" under Fed. R. Civ. P. 12(b)(6)) (citing *Global Network Communs., Inc. v. City of New York*, 458 F.3d 150, 157 (2d. Cir. 2006)).

unrecognizable master recording"[2] that had "never been licensed in any other context," of a kind that has "negligible financial value as a general matter." (Ex. E at 1.)

◊ Even though it is a "general" statement about old recordings in the current music industry that could have been validated with diligence, Plaintiff alleges that she "reasonably relied" on this statement "on the advice of counsel." (Fourth Am. Compl. ¶ 74.)

◊ Without specifying the place, time, or speaker of any other alleged statements along these lines, Plaintiff alleges that WWE told her and her counsel that the value of "The Time Is Now"—the whole song—was "negligible," and that the Sample's 2016-17 value was "negligible." (*Id.* ¶¶ 36, 69.) She does not attempt to reconcile these claims with the actual language of the letter.

- Finally, Plaintiff alleges that WWE never mentioned an upcoming Toyota commercial featuring "The Time Is Now,"[3] which aired in 2017 after the settlement payment. (*Id.* ¶¶ 41, 50.)

◊ She alleges that the 2017 commercial, featuring the full song "The Time Is Now," "directly contradicted" the WWE attorney's 2016 statement about the "negligible" value of the 2003 Sample and how hard it would have been to "monetize separately." (*Id.* ¶ 40.)

◊ Plaintiff does not allege that she or her counsel asked WWE about planned future uses of "The Time Is Now" during the two-year-long settlement negotiation, or that WWE represented there were none were in the works.

◊ She alleges that knowing about the future use in a television commercial would have altered her "negotiating leverage" and "settlement strategy" (*id.*), instead of leaving her with "materially inadequate compensation." (*Id.* ¶ 76).

In the end, rather than insisting on a long-term percentage linked with past revenue or with future uses of the song, Plaintiff agreed to a one-time lump-sum payment. (*Id.*, Ex. A.)

---

[2] A 2015 article attached to the Complaint reflects that a sound artist, former defendant Jacob Dutton, found the thirty-year-old album containing the cover of "The Night the Lights Went out in Georgia" on a "record-shopping excursion" in Vancouver, Canada. (Ex. B.)

[3] Ms. Schofield does not allege that the commercial depicts or mentions Mr. Cena or WWE. (*See* Fourth Am. Compl. Ex. H (noting that the advertisement features the full version of "The Time Is Now," not just the Sample, and that Mr. Cena does not appear in it).)

In addition to fraud in 2016 allegedly justifying rescission of the License, the Fourth Amended Complaint alleges two breaches of License terms. *First*, Plaintiff alleges that the Defendants created a new sound recording that "did not incorporate the licensed Sample," but instead used a new horn recording in its place. (*Id.* ¶¶ 103–104.) Plaintiff contends this is a breach of the License's Paragraph 4, which provides: "the Parties agree and understand that the foregoing license *for WWE's use of the Sample* is limited to 'The Time is Now,' and any remix or re-edit of 'The Time is Now,' and does not include or apply to new musical compositions or sound recordings." (*Id.* Ex. A ¶ 4 (emphasis added).) And *second*, Plaintiff alleges that at some time since 2017 she "purchased or reviewed" some WWE merchandise that somehow included the song, and that Defendants failed to credit her father on these products. (*Id.* ¶¶ 63, 105.) Paragraph 6 of the License states, in relevant part:

> Should WWE decide … to release any newly-manufactured physical product … containing "The Time is Now," *to the extent that credit was given to Art Snider, Sniderman or Periwinkle Records in connection with "The Time is Now" on previously-manufactured physical product*, that credit will be deleted and replaced after the date of this Agreement on any newly-manufactured physical product with the following: "Horns Performed by Pete Schofield and the Canadians, Courtesy of P.S. Records, Canada."

(*Id.* Ex. A ¶ 6 (emphasis added).) Ms. Schofield does not allege what products she "purchased or reviewed," and does not allege that any prior merchandise similar to those products gave attribution for the song to any musicians or producers.

In early 2023, after emerging from a period of personal difficulty, Ms. Schofield was reminded of the popularity of "The Time Is Now" in the context of Mr. Cena's fame. (Fourth Am. Compl. ¶ 53.) Soon thereafter, acknowledging that she had previously "reluctantly signed a very one sided and unfair Settlement Agreement and Release for the <u>Sound Recording</u>," she brought forward a "newly discovered" and different "potential case of copyright infringement" related to "The Time Is Now"—infringement on her father's rights as the 1974 arrangement's composer (not

just performer or producer). (*See id.* Ex. I at 1 (emphasis in original), 2, 7.) Although the License transferred any and all rights the Schofields might have had (*id.* Ex. A ¶¶ 4, 7), in 2023 Plaintiff asserted a theory of composition ownership that no longer appears in the operative complaint.[4]

To support the idea that alleged fraud in a 2016 negotiation is actionable now, the Fourth Amended Complaint describes two 2023 "discoveries" entitling Plaintiff to an extension of the statute of limitations for her claims. One discovery involves the amounts paid to the creator of the 2003 CD of beats, Jake Dutton ("Mr. Dutton"), whose involvement was disclosed in a 2015 article (*id.* Ex. B at 1) and whose payments were revealed no later than a YouTube video "posted in 2021" (*id.* Ex. G at 4). Also in August 2023, Plaintiff allegedly communicated directly with Mr. Dutton about those payments. (*Id.* ¶ 54.) In an email to WWE on August 20, 2023, Ms. Schofield described her awareness of the 2021 video. (*Id.* Ex. G.) In the same email, she also described the second "discovery," a September 2017 appearance of a television commercial featuring "The Time Is Now." (*Id.* Ex. G; *see id.* ¶ 55.) Plaintiff alleges that if she had been told about the 2003 payments and the upcoming 2017 use of the anthem on television, she would have considered those facts important for "valuation, liability, future uses, settlement leverage, and whether to release claims" in negotiating the License. (*Id.* ¶ 71.)

---

[4] Although Ms. Schofield is no longer *pro se* and the fifth version of the complaint was revised by counsel, she is actively involved in the mechanics of the litigation. In the wake of last week's Letter Motion for Extension of Time for this filing (ECF No. 58), she undertook an investigation with regard to the abruptly-ordered Florida hearing in another federal case that spurred WWE's extension request.

Prompted by Plaintiff's discovery that last Monday's hearing in Florida was changed to a videoconference after the filing of the Letter Motion in this case, her counsel has asked WWE to update ECF No. 58: the agreed extension ultimately accommodated WWE counsel's exigent need to prepare for that hearing, but not, as it turned out, the need to travel. The undersigned had Florida plane tickets that he was able to cancel when, after the Letter Motion was filed, he received a phone call in which opposing counsel stated a need for a videoconference. Ms. Schofield's counsel has not indicated that, if the videoconference could have been arranged earlier, he would have refused to join the Letter Motion.

## II. LEGAL STANDARD

In federal court, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Vaughn v. Phoenix House New York Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (internal quotation marks and citation omitted). All factual allegations in the complaint must be accepted as true, but "that requirement is inapplicable to legal conclusions." *Id.* In deciding a motion under Rule 12(b)(6) for failure to state a claim, a court considers "documents attached to the complaint as an exhibit or incorporated in it by reference," and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Rostami v. Open Props, Inc.*, No. 22-CV-3326 (RA), 2024 WL 1313713, at *2 (S.D.N.Y. Mar. 26, 2024) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)); *see also Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (defining the last *Chambers* category as "documents 'integral' to the complaint").

## III. LAW AND ARGUMENT

Plaintiff is asserting the same claims related to the Sample that drove her threats of litigation in 2015 through 2017.[5] At that time, she had just learned (a decade after the fact) of the existence and use in commerce of "The Time Is Now." Ultimately, she settled her threatened copyright claims for an agreed dollar amount, and sold WWE a perpetual license—a binding agreement she now wants to escape. But as it was designed by both parties to do, the License resolves this case at the threshold, and bars all her causes of action.

[5] As of 2023, Plaintiff intended to assert a supposedly new theory of authorship, premised on her father being the author of the 1974 version of "The Night the Lights Went Out in Georgia." (*See* EX. I.) But with the Proposed Intervention of the successor-in-interest of Bobby Russell—the copyright holder for the song who never gave permission for her father's 1974 cover version—Plaintiff has abandoned that theory, and omits any mention of the 2025 copyright she secured to support it.

Seeking to circumvent this reality, Plaintiff alleges fraud in the inducement of the settlement nine years ago, in 2016 and 2017—outside the relevant statute of limitations. While she tries to rely on the New York discovery rule's new window for bringing suit, the latest "discoveries" that she cites allegedly occurred no later than August 2023, itself too long ago for this November 2025 lawsuit to satisfy the two-year renewed statute of limitations.

Further, under ordinary commercial law and a plain reading of the WWE statements involved, the "fraud" that Plaintiff alleges simply involved no deception. Her theories to the contrary are misreadings of the documents. And the Fourth Amended Complaint's other theories, including the misplaced claims of breach that do not actually allege a violation of the License's terms, are preempted or foreclosed.

The Court should resolve this litigation now based solely on the legal defects of the Fourth Amended Complaint, including Plaintiff's failure to allege actual deception in the cited and incorporated 2016 communications from WWE's counsel to hers. This will close the book on protracted disputation that extended for over two years in its first iteration, leading to a settlement—and then, for another two years starting in 2023 based on a series of evolving theories, all of them meritless.

### A. <u>The 2017 License Forecloses This Case at the Threshold</u>

This case is an attempt to extract a second payment for the same perpetual copyright license that WWE already bought. Turning a blind eye to the clear purpose and meaning of the 2017 License, Plaintiff attempts to bring claims about the Sample sounding in copyright and unjust enrichment—seeking windfall damages despite the existence of the License. Those claims are not viable. The Court should enforce the License and its release now rather than subjecting Defendants to litigation over alleged intellectual property they already paid for the right, in perpetuity, to use. (*See* Fourth Am. Compl., Ex. A, License.)

*1. In 2017, Plaintiff Released All Her Claims and Licensed All Her Rights in the Sample*

A release between disputing parties is strong medicine — "a complete bar" to the assertion of claims that it covers. *Great Lakes Reinsurance (UK) SE v. Herzig*, 764 F. Supp. 3d 164, 183 (S.D.N.Y. 2025) (quoting *Glob. Mins. & Metals Corp. v. Holme*, 35 A.D.3d 93, 98 (N.Y. App. Div. 2006)); *Willgerodt on Behalf of Majority Peoples' Fund for the 21st Century, Inc. v. Hohri*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997) ("Settlement agreements are strongly favored in New York and may not be lightly cast aside."). In the context of a motion to dismiss, accordingly, "[w]here a 'release's language is broad and nothing suggests it is inapplicable to the case at hand,' courts in this district will 'apply the release as written.'" *Bendit v. Canva, Inc*., No. 23-CV-473 (RA), 2023 WL 5391413, at *6 (S.D.N.Y. Aug. 22, 2023) (quoting *Barshay v. Naithani*, 2023 WL 2051170, at *9 (S.D.N.Y. Feb. 16, 2023)).

After signing a settlement, parties who seek to revive their released claims must meet a heavy burden. A realization "that they should have held out for more […] is not a legitimate basis to set aside an otherwise valid release." *Wright v. Eastman Kodak Co.*, 445 F. Supp. 2d 314, 317–18 (W.D.N.Y. 2006) (collecting cases); *Hill v. Kelly*, 580 N.Y.S.2d 665 (3d Dep't 1992). And "conclusory assertions of fraudulent concealment" do not justify rescission of a release. *Nicholas v. Nynex, Inc.*, 929 F.Supp. 727, 732 (S.D.N.Y.1996). Indeed, "[w]hen a settlement agreement or release is sought to be voided on the basis of fraud, … every material element of fraud" must be presented "with specific and detailed evidence." *Raghavendra v. Trs. of Columbia Univ.*, 686 F. Supp. 2d 332, 342 (S.D.N.Y. 2010), *aff'd in pertinent part*, 434 F. App'x 31 (2d Cir. 2011) (citations omitted).

Here, the driving force of Plaintiff's claims is that the License was "unfair and one sided." (Fourth Am. Compl. Ex I, at 1.) To the extent that this perspective has evolved into a claim of

"fraud," it fails to state a claim for the reasons discussed below in Section III.B. And to the extent it has generated new attempts to assert the same claims already resolved in 2017, Plaintiff's attacks on the License are inadequately pled and must be dismissed. (*See id.* ¶¶ 27-31 (alleging WWE wrongfully "relied on a 2005 license during negotiations," and might have somehow been liable for more than Plaintiff accepted under the License); ¶ 95 (alleging infringement before the License was signed).) The release constituted Plaintiff's binding agreement never to pursue these theories.

Nothing in the Fourth Amended Complaint suggests that the License, on its face, does not authorize Defendants' alleged use of the Sample in "The Time Is Now," or that Defendants did anything before the License that was not released by its terms. Those binding terms should be "enforced as written," and the associated claims dismissed. *See Bendit*, 2023 WL 5391413, at *6.

*2. Even a Plaintiff Actually Defrauded into a Copyright License Has No Copyright Claim*

A copyright claim is barred by a license that, on its face, authorizes the defendant's allegedly wrongful use; moreover, this remains true even if the license turns out to be subject to rescission. *Graham v. James*, 144 F.3d 229, 238 (2d Cir. 1998). A claim under the law of copyright can be pursued in such a case only if the license "was actually rescinded … *prior to* the allegedly infringing acts." *Id.* (emphasis added). In particular, it is well established in this Circuit that even if a license is voidable based on an alleged fraud, "the license must formally be rescinded *before* an infringement action based on fraudulent inducement of a copyright license can proceed." *TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 93 (2d Cir. 2005) (emphasis added).

In *TVT Records*, the Second Circuit explained the principle that forbids "hindsight" copyright damages if a license agreement that is later challenged. *Id.* Even in cases where a license was procured by fraud, it is not self-rescinding, and no claim for copyright damages can be pursued until *after* a formal rescission. *Id.* An unrescinded license, regardless of its susceptibility to

challenge under other causes of action, is a complete defense that bars the pursuit of any copyright claim. *Id.* In such a case, the plaintiff must establish fraud damages of the same kind that are available for any rescinded contract, and can recover only losses sustained in reliance on the fraud itself.

Here, Plaintiff contends that she has a hindsight claim for copyright damages if she wins rescission. (Fourth Am. Compl. ¶ 96.) But that is not the law: under *TVT Records*, rescission only allows for copyright claims *after* the order granting it. Accordingly, even if her fraud theories were viable, Plaintiff's primary allegations in Count II, predicated on hypothetical future rescission of the License, would fail to state a copyright claim. They must be dismissed.

### B. <u>The Fraud Claim Purportedly Reviving the Dispute Is Time-Barred</u>

The purpose of statutes of limitations is to prevent "surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.… [T]the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Elliott v. Nestle Waters N. Am. Inc.*, No. 13 CIV. 6331 RA, 2014 WL 1795297, at *10 n.9 (S.D.N.Y. May 6, 2014) (quoting *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348–49 (1944)). "Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) (citations omitted).

The statute of limitations for a claim of fraud is "six years from the date the cause of action accrued," or if that time has passed, "two years from the time the plaintiff … discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8).[6] *See, e.g.*, *Conte*

[6] This time period might be shorter under a choice-of-law analysis, but cannot be longer. Under N.Y. C.P.L.R. § 202, "when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the

*v. Tapps Supermarket*, No. 23-1341-CV, 2024 WL 4179720, at *1 (2d Cir. Sept. 13, 2024) (noting plaintiff's "lack of diligence," and rejecting attempt to revive fraud claim on the basis that "he did not learn that his ownership interests … had been fraudulently converted and extinguished" until years after the fact).

Here, the Fourth Amended Complaint provides considerable detail explaining how Plaintiff developed her current fraud theories. It presents the alleged WWE deception as a jigsaw puzzle that could not be pieced together without the arrival of the last two crucial clues. But even if this narrative showed "reasonable diligence" under N.Y. C.P.L.R. § 213(8) between 2017 and 2025 (which it does not), and even if the solution to the puzzle made out a cognizable case of fraud (which, as explained below, it does not), the statute of limitations would still resolve this case. All the allegedly needed puzzle pieces were in Plaintiff's hands, under her own recounting, no later than August 2023, outside the discovery-rule window for this case filed in November 2025.

According to the Complaint, the two critical revelations unlocking the mystery of WWE's 2016–17 fraudulent conduct are as follows: (i) that Jacob Dutton, the sound artist who unearthed and transformed the Sample back in 2003, was paid more for his CD of six beats than Ms. Schofield previously surmised; and (ii) that WWE's alleged arrangements for a license for the 2017 commercial that included "The Time Is Now" went undisclosed in the final weeks before the settlement was signed.

These discoveries do not constitute the first events putting Ms. Schofield on inquiry notice of all material information about how money flowed related to the Sample. But even if they did, and even if they legitimately put WWE's negotiation conduct in a new light as some kind of deception, this case was filed too late. According to the complaint, Mr. Dutton's description of

---

shorter limitations period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued." *Thea v. Kleinhandler*, 807 F.3d 492, 497 (2d Cir. 2015).

his payment and its amount was published online "in 2021," and it spurred some of Ms. Schofield's indignation in writing to WWE on August 20, 2023. (*See* Ex. G at 4 (citing the video almost three years ago).) And according to the complaint, the Toyota commercial was discussed publicly in connection with Mr. Cena in 2017, and likewise spurred Plaintiff's initial outreach in late August 2023. (Ex. H; Ex. G at 4.)

The six-year clock on the claim of fraud under N.Y. C.P.L.R. § 213(8) expired long ago. Without explaining why "reasonable diligence" would not have required earlier investigations, Schofield claims it was restarted only with her revelations in and before August 2023. But even if the 2023 research could not have been done earlier using readily accessible sources (it could), and even if it revealed something deceptive not previously identifiable (it did not), Plaintiff was required to file her fraud claim by August 2025. The claim is barred under N.Y. CPLR § 213(8) according to the narrative told in the complaint itself. *See Conte*, 2024 WL 4179720, at *1.

### C. <u>No Fraud Is Alleged</u>

The Fourth Amended Complaint, read in its entirety with the incorporated materials, does not identify a false statement or any duty to disclose the alleged information that was not volunteered in the 2016-17 negotiations. As a result, it lacks multiple elements that are required in a complaint for fraud in the inducement. The claim would be subject to dismissal even if it had been brought in timely fashion.

A number of well-established pleading standards defeat Ms. Schofield's attempt to present as fraud the written interactions between the parties in 2015 through 2017, in a context of mistrust and threatened litigation leading to a contractual settlement.[7] Applying the doctrines depends on

[7] Many other doctrines defeat the claims of procedural unconscionability, coercion, power imbalance, mistake, and "related concerns" mentioned in the Fourth Amended Complaint (*see, e.g.*, ¶ 59), but Defendants reserve their arguments on these points as the Fourth Amended Complaint does not ultimately say that it relies on them.

a clear understanding of facts that are jumbled in the Complaint and distorted in Plaintiff's old records—but are crystal clear in the actual exhibits and documents incorporated by reference. Once the facts are presented plainly as they appeared in the interactions themselves, the law dictates a cut-and-dried answer that is clearly established under any state's oldest principles of commercial law.

*1. Elements of Fraudulent Inducement and Concealment*

A complaint alleging fraud must be pleaded with specificity. Fed. R. Civ. P. 9(b); *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (listing the required specific facts: "(i) the specific statements the plaintiff contends are fraudulent; (ii) the person making the statements; (iii) when and where the statements were made; and (iv) why the statements were fraudulent"). To state a claim for fraudulent inducement, a complaint must allege that the plaintiff reasonably relied on a material representation the defendant made, knowing it to be false, for the purpose of inducing the other party's reliance in entering the transaction. *Grewal v. Cuneo*, No. 13-CV-6836 RA, 2015 WL 4103660, at *13 (S.D.N.Y. July 7, 2015), *aff'd* sub nom. *Grewal v. Cuneo Gilbert & LaDuca LLP*, 803 F. App'x 457 (2d Cir. 2020). At the core of the claim there must be a false statement: courts do not hesitate to dismiss claims to rescind a settlement based on fraud where the plaintiff "has not identified a false representation." *Genao v. Ruiz*, No. 24-CV-2077 (LJL), 2025 WL 219160, at *5 (S.D.N.Y. Jan. 16, 2025) (finding under Rule 12(b)(6) that "[n]one of the alleged misrepresentations is false, let alone one that [plaintiff] relied upon").

For purposes of a fraudulent concealment claim, predicated on an allegedly deceptive omission, New York recognizes no duty to disclose extra facts allegedly material to a potential transaction, except where (i) "the parties are in a fiduciary relationship"; (ii) one party knows that the other "is acting on the basis of mistaken knowledge" and cannot be set straight with "readily available" information; or (iii) "a party has made a partial or ambiguous statement, whose full

meaning will only be made clear after complete disclosure." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 582 (2d Cir. 2005) (applying New York law). For purposes of the second exception, a nondisclosing party's "knowledge of [its own] intention is not knowledge of facts, and certainly not the kind of facts required" under the exception. *First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.*, 52 F. Supp. 3d 625, 638 (S.D.N.Y. 2014). Under the law, accordingly, there is no duty to disclose plans that are consistent with the premises of the transaction merely because the other side does not know them.

When analyzing whether a party reasonably relied upon deceptive conduct in determining the value of a transaction, the Second Circuit looks to whether the party had access to information that allowed for verification of the opposing party's representations. "Where … both parties have available the means of ascertaining the truth, New York courts have held that the complaining party should have discovered the facts and that any reliance under such circumstances therefore would be unjustifiable." *Conte v. Tapps Supermarket*, No. 22-CV-3109, 2023 WL 6594351, at *15 (E.D.N.Y. July 3, 2023), *report and recommendation adopted*, 2023 WL 6140182 (E.D.N.Y. Sept. 20, 2023), *aff'd*, No. 23-1341-CV, 2024 WL 4179720 (2d Cir. Sept. 13, 2024).

Even where a material fact is held peculiarly within the knowledge of just one of the parties, justifiable reliance requires that "the information was not such that [it] could have been discovered by the other party through the exercise of ordinary intelligence"—including by asking the defendant about it. *Vinci Brands LLC v. Coach Servs., Inc.*, No. 1:23-cv-5138, 2025 WL 2771621, at *4 (S.D.N.Y. Sept. 29, 2025) (dismissing fraud complaint for failure to "plead facts sufficient to show that [defendant] had a duty to disclose" its plans about future licensing arrangements) (citing *LMM Cap. Partners, LLC v. Mill Point Cap., LLC*, 207 N.Y.S.3d 38, 43 (1st Dep't 2024)). "Ordinary intelligence includes, at the very least, a duty to inquire" with the other party about the

allegedly material information. *Id.* at *5 (quoting *Jana L. v. W. 129th St. Realty Corp.*, 802 N.Y.S.2d 132, 135 (2005)).

In addition to false representations or omissions, a plaintiff must "allege facts that give rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). This includes "(1) the defendant's knowledge of their misstatement[']s or omission's falsity and (2) the defendant's intent to induce reliance" on the misrepresentation. *Chartwell RX, LLC v. Inmar, Inc.*, 620 F. Supp. 3d 59, 72 (S.D.N.Y. 2022) (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 171 (2d Cir. 2015)). For an inference "[t]o be 'strong,' [it] must be as cogent and compelling as plausible opposing inferences." *Chartwell RX*, 620 F. Supp. 3d at 74.

Relatedly, as the Second Circuit held in *Brass v. Am. Film Techs., Inc.*, "a fraudulent concealment claim based on superior knowledge must allege *that the defendant knew* that the plaintiff was acting under a mistaken belief with respect to a material fact." 987 F.2d 142, 152 (2d Cir. 1993) (emphasis added); *see, e.g.*, *Lemon v. Hollinger*, No. 17-CV-4725 (RA), 2017 WL 6547741, at *6 (S.D.N.Y. Dec. 19, 2017) (dismissing fraud claim because a "duty to disclose arises only when it becomes apparent to the non-disclosing party that another party is operating under a mistaken perception of a material fact") (internal quotation omitted). A plaintiff cannot later sue based on a misapprehension of fact that the other party did not intentionally cause and did not know was happening. *Id.*

*2. The Table of Dollars Offered as a Settlement Was Not Fraud*

Plaintiff bases one of her allegations of fraud on the revenue disclosure that WWE provided to her attorney in March 2016. But Plaintiff misstates the reason for that disclosure, and therefore the meaning of it: as Exhibit A hereto shows, WWE did not simply provide information about an arbitrarily chosen subset of revenues related to "The Time Is Now." Instead, it answered Plaintiff's

lawyer's specific question about the past value of specified revenue streams. Plaintiff asked that question, as her attorney's email shows, merely because those revenues were on the table as part of a specific offered deal to resolve the dispute. Far from standing alone as a tabulation of dollar figures, the document merely provided data about the size of a proposed settlement. That message was in no sense misleading.

Plaintiff does not allege that the tabulation at Exhibit D to the complaint was an inaccurate accounting of the amounts actually received. And Plaintiff's current belief that the table nonetheless carried a deceptive message is belied by the actual exchange that spurred its creation and transmission. Indisputably, read in context, the table answered Schofield's precise question about how much she was being offered: it was not a misrepresentation, and did not create a duty to make further disclosures to prevent her from being misled about what the settlement would include. Even if there other past or future payments related to the song might have been generally of interest (such as those to Mr. Dutton or from Toyota), nothing in the Fourth Amended Complaint suggests WWE had a duty to disclose them without being asked. And there is no allegation that it was asked *anything* about the value of "The Time Is Now"—only about the value of the then-pending offer it had made to Plaintiff. (*See* Exhibit A hereto.)

The incorporated materials of the Fourth Amended Complaint show conclusively that Plaintiff was given a complete answer to a specific question, which cannot now be repainted as an actionable "half-truth" to unwind the entire transaction. Nor can any inference be drawn that, by answering the question Schofield asked, WWE intended to deceive her on a different issue. The documents show clearly that the topic was not the value of the Sample, or the value of "The Time Is Now," but the value of the offered settlement. With this exchange as her only specific allegation as to this fraud, Plaintiff has not alleged that at any time WWE "knew that [she and her attorney

were] acting under a mistaken belief with respect to a material fact" about past revenue. *Brass*, 987 F.2d at 152.

### 3. *A Statement about Past "Negligible" Value Was Not Deception about Current Value*

Rule 9(b) requires specificity in alleging fraudulent statements, among other reasons, because it allows for a threshold assessment of whether the claim has substance. Without context, a word or phrase can be misconstrued and alleged to mean something it unquestionably did not mean at the time. *See U.S. ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (the requirement of precision "protect[s] defendants against spurious charges of immoral and fraudulent behavior"). Here, with the distorting effect of hindsight exercised far outside the statute of limitations, Ms. Schofield reads the statement from WWE's lawyer at the outset of Exhibit E, a letter from March 2016, as a disparagement of the then-current value of the Sample or of "The Time Is Now." This is not a reasonable reading of the letter, as the Court can discern for itself.

The actual document in which WWE used the word "negligible" involves a very specific topic, and makes a very narrow point: namely, that as it resided in a Vancouver record store in 2003 with hundreds of other albums, the Sample had very little value. From that obscurity, the Sample was brought into the cultural mix by an enterprising sound artist, incorporated into an anthem of determination by one of the most famous athletes and performers of the last few decades, and vaulted to prominence by the platform that WWE had built over many decades before that. Both parties knew all these facts. WWE's statement about old and unknown samples "as a general matter" is just a reminder of a matter of common knowledge. Nothing in Exhibit E disparages, even by reverse puffery, the value associated with "The Time Is Now" as it existed in 2016. Read for its actual content, Exhibit E refutes Plaintiff's allegations that it was deceptive.

Since WWE's statement allegedly misrepresenting a fact about "The Time Is Now" was directed, in truth, only to the topic of obscure music samples "as a general matter," it does not constitute fraud. (*See* Exhibit E.) *See Genao*, 2025 WL 219160, at *5 (dismissing claim for failure to allege falsity). And it could not possibly have been reasonable for Plaintiff to rely on a clear misreading of her counterparty's opinion on this collateral topic as a basis to settle or not settle her claim. *See Romain v. Webster Bank N.A.*, No. 25-316-CV, 2025 WL 3537344, at *2 (2d Cir. Dec. 10, 2025) (affirming dismissal of fraud complaint premised on a misunderstanding that accordingly "did not plausibly allege how any statement made by [the defendant] misrepresented facts").

*4. Failure to Volunteer Future Revenue Plans Was Not Fraud*

All New York's legal doctrines of fraudulent inducement laid out above flow from a basic intuition about the nature and purpose of commercial transactions—that frequently, the property will have more value in the hands of the buyer than those of the seller. A hypothetical illustrates the point: suppose a teenager sells his bicycle to another teenager, for an agreed price. He later learns that the buyer has (or has taken on) a paper route, and is making a profit from using the bicycle that the seller did not anticipate, ask about, or foresee. Or in an adult context: consider selling a house to someone who fails to disclose imminent plans (and even negotiations) to renovate and re-sell it for a much higher price, or turn it into an Airbnb. The law aligns with common sense: neither of these transactions is unfair, much less "fraud by concealment." *See, e.g.*, *First Hill Partners*, 52 F. Supp. 3d at 639 (dismissing fraudulent concealment claim for failure to allege "any reason why [the defendant] would have a duty to disclose its [post-transaction] plans").

In the same vein, even if all the speculations of the complaint are entirely true, there is no fraud in WWE's alleged failure to disclose the potential deal for the television commercial that

included "The Time Is Now." Commerce presupposes that new value may be unlocked by a transaction: unless lies are told about that value in response to a seller's questions, or partial disclosures are provided on purpose to mislead, New York has never treated as "fraud" an information disparity about future commercial plans or intentions on one side of a deal. *E.g.*, *First Hill Partners*, 52 F. Supp. 3d at 638.

This rule is applied at the pleading stage and is squarely on point here. Nowhere does Ms. Schofield allege that any statement, much less a false or misleading one, was made about the uses WWE might make of the License it was buying. And she has not adequately alleged a duty to disclose business plans spontaneously in an arm's-length negotiation between counsel that included, over the course of two years, countless opportunities to request such information. *See Aniero Concrete Co.*, 404 F.3d at 582; *see also Nicholas v. Nynex, Inc.*, 929 F. Supp. 727, 732 (S.D.N.Y. 1996) (rejecting attempt to void settlement based on "Plaintiff's wholly conclusory assertions of fraudulent concealment—which consist of nothing more than plaintiff's contention that he did not know about [certain practices] so defendant must have concealed it from him").

Courts do not consider commercial wrongdoing to be afoot merely because one party is unable to exploit the other side's plans and supposedly generate a last-minute shift in "settlement leverage" — especially where no misrepresentation was made, and the plaintiff made no inquiry on the topic despite every incentive and opportunity to do so. *See Vinci Brands*, 2025 WL 2771621, at *4. Like the others, this fraud claim could not stand, as a matter of law, even if it had been asserted within the statute of limitations.

### D. <u>The Contract and Unjust Enrichment Theories Fail to State a Claim</u>

Plaintiff's alternative theories of recovery are pled in conclusory fashion, and ignore both the actual facts about the License and the law governing alternative pleading in copyright and contract cases. They should also be dismissed with prejudice.

*1. Plaintiff Fails to Allege Any Instance of a License Violation*

A plaintiff alleging breach of a license agreement may not rely on conclusory allegations alone, and must allege facts in each instance grounding the alleged violation in the actual terms of the document. *Warren v. John Wiley & Sons, Inc.*, 952 F.Supp.2d 610, 624–25 (S.D.N.Y. 2013). In *Warren*, the plaintiff, a photographer who licensed pictures to the defendants, alleged that in unspecified publications the defendants had "exceed[ed] material terms in the licenses, and/or violat[ed] the express and implied terms of each license by refusing to disclose usage information." *Id.* The court rejected this vague and conclusory pleading, noting that "[w]ere the Court to allow such pleading, it would provide an avenue to use the discovery process to conduct baseless fishing expeditions, something the Supreme Court has explicitly directed lower courts to prevent." *Id.* (granting motion to dismiss for lack of "the requisite specificity") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 670 (2009)). A claim of breach must "show[]" that the plaintiff is entitled to relief under the actual provisions of the contract. Fed. R. Civ. P. 8(a)(2). But here, the Fourth Amended Complaint misconstrues the License document, and alleges breaches that do not actually or plausibly violate its terms.

First, Plaintiff alleges that some unidentified WWE merchandise containing "The Time Is Now" fails to credit her father and his band. (Fourth Am. Compl. ¶ 63.) But only with elliptical and conclusory phrasings does she attempt to fit this allegation into the language of the License document. As the Court can readily discern from the actual License, Ms. Schofield is not entitled to "attribution" (*Id.* at ¶ 65) with every occurrence of the song in public—only in instances where "credit was given to Art Snider, Sniderman or Periwinkle Records in connection with 'The Time is Now' on previously-manufactured physical product." (Ex. A, License, at ¶ 6.) Here, Ms. Schofield does not even allege that she has identified any prior physical product crediting an album producer or musician, much less that it was materially similar to the unidentified materials she

vaguely states that she has "reviewed or purchased." (Fourth Am. Compl. ¶ 63.) Even if there is no credit of any kind given on the unidentified WWE merchandise, this general allusion to an "attribution" right, or of a "failure to ensure" it was honored, does not sufficiently state a claim of breach under the actual License language. *See Warren*, 952 F.Supp.2d at 625.

Next, in similar fashion—also without heeding the language of the document—Ms. Schofield alleges wrongdoing in connection with a new version of "The Time Is Now," allegedly recorded for release sometime in 2019. (Fourth Am. Compl. ¶ 61.) But she alleges that this version does *not* include the Sample, which is the only intellectual property that she claims to hold. (*Id.*) Accordingly, her citation to paragraph four of the License is irrelevant: that clause applies to "WWE's use of the Sample" (*id.* Ex. A ¶ 4) itself — the intellectual property that the 2019 song does *not*, by Plaintiff's own description, include. Paragraph four of the License prevents WWE from putting the Sample into a *different* song without further permissions from Ms. Schofield; by contrast, the Fourth Amended Complaint alleges that the *same* song was recorded without the Sample.

Ms. Schofield asserts rights only in the specific recording allegedly made by her father, not in the composition of the original of "The Night the Lights Went Out in Georgia" or his 1974 cover of it. (*See* Fourth Am. Compl. ¶ 4.) She alleges no legal basis on which the Schofield family would have any rights infringed by the more-recent recording of Mr. Cena's anthem without the Sample, using passages of Bobby Russell's music in which Plaintiff claims no composition copyright. The complaint fails to allege any breach of the License, or any other Schofield right, in connection with the 2019 version of "The Time Is Now."

*2. The Unjust-Enrichment Claims Fail as a Matter of Law*

Unjust enrichment "is a quasi-contractual claim that ordinarily can be maintained only in the absence of a valid, enforceable agreement." *Foley v. Wilson*, No. 18-CV-504 (RA), 2020 WL

30338, at *6 (S.D.N.Y. Jan. 2, 2020). In other words, "[t]he exercise of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Bracken v. MH Pillars Inc.*, 290 F. Supp. 3d 258, 266 (S.D.N.Y. 2017) (*citing Clark-Fitzpatrick, Inc. v. Long Island Railroad Co.*, 70 N.Y.2d 382, 388 (1989)).

Here, Plaintiff's alternative claim for unjust enrichment fails for the simple reason that the License is valid and enforceable, and should not be voided, as laid out above. Since fraud is the only basis alleged for rescission that is alleged to circumvent the statute of limitations, the claim for equitable compensation rises and falls with the fraud theories refuted above. In the presence of a valid contract, there can be no quasi-contract claim, so the unjust-enrichment claim must be dismissed along with the fraud claim. *Bracken*, 290 F. Supp. 3d at 266.

Furthermore, courts in this district routinely dismiss unjust enrichment claims premised on the unauthorized use of a plaintiff's works, because they are preempted by the Copyright Act. *E.g.*, *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596 (S.D.N.Y. 2010); *Gusler v. Fischer*, 580 F. Supp. 2d 309, 316 (S.D.N.Y. 2008) (dismissing claim where "the alleged acts giving rise to the unjust enrichment claim here are identical to those underlying the federal copyright claim") (citing 1 Nimmer on Copyright § 1.01(B)(1)(g) (2008)). The Fourth Amended Complaint does not allege equitable damages that are any different from the categories of damages authorized under copyright law. As a result, the Copyright Act preempts these theories of recovery. The equitable causes of action should be dismissed.

### E. <u>TKO is Not a Proper Defendant</u>

Zealously pursuing all those who created or derived monetary value from the 1974 Sample, Ms. Schofield has included as a defendant the parent company (TKO) of the License counterparty (WWE). But a parent company is not liable for the conduct of its subsidiary except when very

particular abuses of the corporate form are alleged. *See generally Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1052 (2d Cir.1997).

Under New York law, a plaintiff seeking to pierce the corporate veil must establish that "(1) the owner has exercised such control that the corporation has become a mere instrumentality of the owner, which is the real actor; (2) such control has been used to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff." *Id.* These allegations must be presented in non-conclusory fashion in the complaint, and mere receipt of upstream benefits from the conduct of the subsidiary's business are no substitute for allegations of misuse of the corporate form. *Id.* None of these elements is alleged here, and TKO must be dismissed for this independent reason.

## IV. CONCLUSION

For the foregoing reasons, the Fourth Amended Complaint should be dismissed with prejudice.

Dated: August 3, 2026

Respectfully Submitted,

**BENESCH, FRIEDLANDER,**
**COPLAN & ARONOFF LLP**

/s/ *James von der Heydt*
James von der Heydt (*pro hac vice*)
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Phone: 216-363-4500
jvonderheydt@beneschlaw.com

Matthew Fox
Maya E. Rivera
Benesch, Friedlander, Coplan & Aronoff, LLP
1155 Avenue of the Americas, Floor 26

New York, New York 10036
Phone: 646-593-7050
mfox@beneschlaw.com
mrivera@beneschlaw.com